UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE ARMSTRONG,<br><br>   Plaintiff,<br><br>  v.<br><br>SUTTER COUNTY SUPERINTENDENT OF SCHOOLS, a California public entity; BILL CORNELIUS, in his individual capacity,<br><br>   Defendants. | No. 2: 13-cv-02624-KJM-DB<br><br><br>ORDER |

   A former caregiver of a non-verbal adult with autism sues a state agency claiming she was fired in retaliation for complaining about disability discrimination. The state agency, Sutter County Superintendent of Schools ("Sutter Schools"), and Superintendent Bill Cornelius now move for summary judgment. ECF No. 42. Plaintiff Annette Armstrong opposes. ECF No. 43. The court heard the motion on August 25, 2017. ECF No. 52. As explained below, the court GRANTS defendants' motion.

I. BACKGROUND

  A. Factual Disputes and Evidentiary Objections

   If a party genuinely disputes a fact, the court draws reasonable inferences in plaintiff's favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). Parties may also object to the

cited evidence that proves an undisputed fact. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). But the evidentiary admission standard at summary judgment is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Here, the court does not address every dispute the parties raise. As discussed at certain junctures below, the court notes that while Armstrong lists many facts as "disputed," she does not actually deny most material facts but merely adds context and her own justifications. *See generally* ECF No. 43-3 (responses to defendants' statement of facts). Rather than note each purported dispute, the court treats each listed fact as undisputed unless otherwise stated. The court also does not reach defendants' objection to Pamela Fetters's declaration as the declaration does not inform the court's conclusion here. *See* Defs.' Obj., ECF No. 44-1.

B.  Factual Background

David Swanson is a non-verbal adult with autism and insulin-dependent diabetes. Defense Fact ("DF") 5-6, ECF No. 42-2. Plaintiff Annette Armstrong, as a licensed vocation nurse for Sutter Schools, was David's caregiver from late 2009 to late 2012. DF 4. David was enrolled in class with other disabled students, and Ms. Tina Bradley was his teacher. DF 2.

C.  Armstrong Verbally Complains about David's Treatment at School

Immediately, Armstrong resisted how Ms. Bradley treated David. DF 7, 77. From late 2009 to late 2012, Armstrong periodically complained about Ms. Bradley's behavior to Assistant Superintendent Barbara Hickman and several other supervisors. DF 7, 11, 15, 18-19, 77. Armstrong said Ms. Bradley delayed David's meal times; once force-fed him to the point of vomiting; spoke to him disrespectfully; disregarded his physician-approved health plan; and deprived David of food, water, medication, breaks and restroom access. DF 7, 11; *see also* Pl.'s Fact ("PF") 74, ECF 43-2. Armstrong also voiced more general complaints, highlighting the unsanitary conditions in which David's food and medicine were kept, DF 15, and emphasizing

what she perceived as David's disparate treatment. DF 18-19 (unlike other students, David was tasked with collecting recyclables from trash cans).

Each complaint was verbal and not one alleged laws were broken. DF 8, 14, 23. The supervisors and administrators to whom Armstrong complained generally did not reprimand her or seem upset by her complaints. DF 9, 17, 21, 24. Indeed, Armstrong's complaints were often followed with corrective action. *See*, *e.g.*, DF 12 (changing food regime per Armstrong's recommendation); DF 16 (moving David's fridge to a more sanitary room, as requested). When Armstrong did receive pushback it came from Ms. Hickman, who defended Ms. Bradley's teaching methods. DF 10, 22.

In February 2012, Armstrong's concerns persisted, so she reported Ms. Bradley's conduct to Adult Protective Services ("APS") over the phone. PF 47. Armstrong never filled out forms, wrote anything down, was interviewed or told Sutter Schools about this complaint. DF 31; Pl.'s Dep. 167-69, 177:13-15, Ex. 2 to Suppl. Jay Decl., ECF No. 42-4; Hickman Decl., ECF No. 42-5, ¶ 15.

D.  Armstrong Complains to the Department of Education

On October 23, 2012, Armstrong formally complained to the California Department of Education ("Department") about David's treatment and Sutter Schools' inadequate response to her concerns. DF 32. This was the first formal complaint Sutter Schools leadership knew about. DF 31, 33. Superintendent Cornelius immediately hired an outside law firm to investigate Armstrong's concerns: The firm and the Department found her concerns unsubstantiated and recommended no corrective action. DF 34-37.

E.  Sutter Schools Fires Armstrong

Fast forward to February 2013. Sutter Schools placed Armstrong on paid administrative leave to investigate her job performance. The investigation concluded in April 2013 with the following findings:

- In June 2012, members of the public reported that Armstrong revealed confidential and embarrassing information about David at a public pool. Human Resources director

Wendy Bedard interviewed Armstrong and the witnesses, and then issued a letter of reprimand for unprofessional behavior that violated Sutter Schools' policies. DF 45-49.

- In November 2012, without permission, Armstrong taught a para-educator how to inject insulin and told her where to find the syringes in an emergency. DF 50-52.
- In December 2012, Ms. Hickman warned Armstrong her performance was unsatisfactory, citing unexcused absences, schedule deviations, and ignored directives. DF 55.
- In December 2012 and January 2013, two colleagues requested not to work with Armstrong. One, a para-educator, cited specific instances in which Armstrong made her feel stressed, confused and ill. DF 53-54. The other, a school nurse, asked to be removed as Armstrong's supervisor because Armstrong kept her inadequately informed about David's health concerns. DF 56.
- In February 2013, Armstrong gave David an unauthorized supplement and did not document it in his medical log, DF 57, 65, used offensive language in the classroom when confronted about it, DF 59, and did not accompany David during a fire drill nor ensure he had his emergency supply kit with him, DF 58.

On February 27, 2013, Ms. Bedard confirmed each listed incident by interviewing several employees. DF 60-64. Two days later, she interviewed Armstrong at which point Armstrong admitted to the cited misconduct, but justified her actions. DF 65-68. In an April 19, 2013 letter, Superintendent Cornelius formally notified Armstrong about the misconduct charges against her; the letter advised that unless she successfully challenged the charges, Armstrong would be fired. DF 71, 73; *see* Letter, ECF No. 42-5 at 164. Armstrong did not challenge the charges and was fired on June 3, 2013. DF 74-75.

F.  Armstrong Sues for Retaliation

In December 2013, Armstrong filed this lawsuit, alleging three claims against Sutter Schools and Superintendent Cornelius. ECF No. 1. She proceeds now on her third Amended Complaint. Third Am. Compl. ("TAC"), ECF No. 30. As noted, defendant has moved for summary judgment. Mot., ECF No. 42; Defs.' Mem., ECF No. 42-1. In her opposition, Armstrong acquiesces to summary judgment of her interference, coercion and intimidation claim

under the American with Disabilities Act[1] ("ADA"). Opp'n, ECF No. 43, at 10. At hearing, she also conceded to summary judgment of her First Amendment retaliation claim. She opposes summary judgment on her sole remaining claim for retaliation under the ADA.[2] She contends defendants fired her in retaliation for complaining to the Department about David's mistreatment. TAC ¶¶ 24-28; Opp'n at 11-17. Defendants argue summary judgment is warranted on this claim because the record indisputably shows the reason for firing Armstrong was her poor work performance, not her protected complaint.

II. SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden, which requires "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, however, the burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of

---

[1] The Act provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

[2] Although Armstrong's complaint lists other retaliatory conduct, such as denying her request for an ergonomic chair, reassigning her to a different student, and prohibiting her from giving David "respite care," her opposition brief cites only the investigation of her and her termination as retaliatory. *See* Opp'n at 14.

material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (original emphasis).

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

III. DISCUSSION

Armstrong contends defendants investigated and fired her in retaliation for her protected complaints about disability discrimination. TAC ¶¶ 24-28; Opp'n at 11-17. Assessing whether an ADA retaliation claim survives summary judgment entails applying a burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015) (explaining *McDonnell*'s framework applies to ADA retaliation claims). First, the court assesses if, construing the facts in plaintiff's favor, she has raised a prima facie retaliation case. *Brenneise*, 806 F.3d at 473 (citations omitted). A prima facie case requires facts that could lead a reasonable juror to find (1) the employee engaged in statutorily protected activity; (2) the employee suffered

an adverse employment action; and (3) a causal link between the two. *Id*. (citations omitted). If plaintiff is successful at this step, the burden shifts to the defendant employer to show legitimate reasons for its adverse action. *Id*. If the employer carries this burden, to defeat summary judgment plaintiff must then raise a genuine issue of material fact about whether the employer's non-discriminatory reason was pretextual.

### A. Prime Facie Case

For purposes of summary judgment, Armstrong has established a prima facie ADA retaliation case. A reasonable juror could find a causal link between her protected activity and her subsequent termination. Two of the three elements are undisputed. Armstrong formally complained to the Department about ADA discrimination in Ms. Bradley's classroom. Her complaint is a protected act. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Armstrong also was formally investigated and terminated; these are adverse employment actions. *Id.* at 1242-43 (adverse employment action is one that "is reasonably likely to deter the charging party or others from engaging in protected activity.") (internal citation and quotation marks omitted). The parties dispute the causation element. At trial, Armstrong would be required to show, by a preponderance of the evidence, that "but for" filing her complaint she would not have been fired. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2534 (2013); *Brenneise*, 806 F.3d at 473 (explaining "but for" test is used in retaliation cases relating to ADA employment discrimination and compiling cases that use it). To survive summary judgment, she need only raise a material factual dispute as to this purported but-for causal link.

Armstrong has done so here. She contends she complained to the Department about David's treatment in October 2012 and that within months following this complaint Sutter Schools scrutinized her work performance, formally investigated her and then fired her. Opp'n at 12. Armstrong also notes she named Superintendent Cornelius in her Department complaint and that Cornelius fired her. *See Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (noting courts may impute bias when employer with bias initiates the investigation that leads to an adverse employment action). A reasonable juror could find the relatively short time span between her protected activity and the adverse employment action, with Superintendent Cornelius's

potential bias, together provide the requisite causal link. Armstrong has raised a prima facie ADA retaliation claim.

  B.  <u>Non-Retaliatory Reason</u>

  The burden shifts to defendants to show a legitimate, non-retaliatory reason for investigating Armstrong's performance and firing her just months after her protected activity. Defendants argue the decision to investigate Armstrong's work performance, which they did no less than four months after her Department complaint, was based on reasons entirely unrelated to the complaint, some of which pre-dated the complaint.

  Defendants point to an incident from June 2012, well before Armstrong's Department complaint, where three people reportedly heard Armstrong loudly discussing confidential and embarrassing information about David's medical and emotional state at a public pool. DF 45-47. Defendants attach statements and interview notes from the witnesses taken within days of the incident, each of which independently verifies what Armstrong said. Witness Statements and Interview Notes, Exs. A- C to Bedard Decl., ECF No. 42-6. For disclosing this information, Armstrong was formally reprimanded in July 2012, three months before she filed her Department complaint. DF 49; 2012 Reprimand Letter, Ex. E to Bedard Decl.

  Defendants cite additional instances of Armstrong's workplace misconduct from late 2012 through early 2013. In November 2012, without authorization, Armstrong taught a para-educator how to inject insulin and told this para-educator where the syringes were kept in case of an emergency. DF 50-52. Then two employees, describing personality clashes and unprofessional conduct, asked to no longer work with Armstrong: One in December 2012 and another in January 2013. DF 53- 56. Defendants also note Armstrong's January 2013 "unsatisfactory performance" warning, which catalogued her unexcused absences, schedule deviations, and disregard for directives. DF 55. Finally, defendants cite several incidents in February 2013: Armstrong gave David an unauthorized supplement, DF 57, and did not document it, DF 65; she also used profanity in a classroom when confronted about the lapse, DF 58; and she left David during a fire drill and did not ensure he had his emergency supply kit with him, DF 58-59.

A reasonable factfinder could find, taken together, this evidence provides a legitimate, non-retaliatory justification for defendants' decision: They fired Armstrong based on her pattern of misconduct, her questionable judgment as to David's care, and her conflicts with coworkers. It was only after interviews and investigations into each incident, and Armstrong's decision not to challenge the defendants' findings, that she was fired. DF 74, 75. Defendants have met their burden at this stage.

C. Pretext

The burden shifts back to Armstrong to show a reasonable juror could conclude defendants' stated reason for investigating and terminating her was merely pretextual. *Brenneise*, 806 F.3d at 473.

In determining pretext, "a plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 148 (2000). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination[.]" *Id.* at 147 (citation and internal quotation marks omitted). But an employer's knowledge about protected activity and temporal proximity between the protected activity and an adverse employment action does not alone prove "but for" causation. *Nassar*, 133 S. Ct. at 2531-32 (adopting "but for" causation test and discussing "ever-increasing frequency" of retaliation claims and how weak causation standard emboldens frivolous claims that sap judicial resources and "raise the costs, both financial and reputational, on an employer whose actions were not in fact the result of any discriminatory or retaliatory intent.").

Here, on the record before the court, no reasonable juror could find defendants' stated justification for firing Armstrong was a pretext for retaliation. Armstrong's opposition brief does little more than argue Sutter Schools knew about her disability discrimination complaint and then recommended her termination months later. Opp'n at 15-17. Armstrong tries to discredit defendants' evidence, but does so primarily through an unsupported and self-serving

declaration. *See id.* at 16; *see also* Pl.'s Decl., Ex. 2, ECF No. 43-1. Her position relies on at least four conclusions unsupported by the record.

First, Armstrong asserts the law firm Girard & Edwards, which investigated her disability complaint, was also the entity that investigated her work performance. *See* Opp'n at 9. Specifically, she says, "[d]efendants immediately launched a 'Chill' investigation into Plaintiff, using the same investigators." *Id.* at 13, 15. But the undisputed record shows Sutter Schools investigated Armstrong's misconduct, not Girard & Edwards. Hickman Dep. 46:8-14, Ex. I to Jay Decl., ECF No. 42-2 (Q: "Did Girard and Edwards play any role in any investigation . . . against Annette Armstrong in 2013?" A: "No."). Girard & Edwards did help the Superintendent draft the formal charges and termination letter after the investigation ended. *Id.* at 48:1-5. No reasonable juror could find the involvement of Girard & Edwards here showed pretext.

Second, Armstrong argues "[a]ll of the charges contained in the Statement of Charges were said to have occurred after Plaintiff Armstrong engaged in protected activity." Opp'n at 13. This fact, she argues, shows the charges were part of a post-hoc retaliatory ruse. She identifies her February 2012 complaint to APS as the first protected activity date. Pl.'s Decl. ¶ 12. But this first complaint was strictly verbal: Armstrong admits she never filled out forms, wrote anything down or even interviewed, and so has no reason to believe Sutter Schools knew about the call. Pl.'s Dep. 167-69, 177:13-15. Defendants' position that nobody at Sutter Schools knew about the complaint is unrebutted. Hickman Decl. ¶ 15. When asked at hearing, plaintiff's counsel conceded the first relevant "protected activity" date is October 2012, the date Armstrong filed her written complaint with the Department. Armstrong was formally reprimanded on one occasion several months before. *See* July 12, 2012 Reprimand Letter. Although Armstrong apparently enjoyed a clean employment record before the pool incident, the July 2012 letter undermines her characterization of each reprimand she received as occurring only after the fact. No reasonable juror could find plaintiff's charged misconduct occurred entirely after she engaged in protected activity.

Third, Armstrong contends Superintendent Cornelius and Assistant Superintendent Hickman met twice to discuss the logistics of her termination just days after she filed her October

complaint. PF 111, 117. But the evidence she cites does not support this conclusion. Several core events that triggered Armstrong's termination had not yet occurred days after her October complaint. DF 59-64 (listing February 2013 incidents). The first "termination logistics" discussion Cornelius and Hickman had happened only after Cornelius recommended her termination in April 2013. Hickman Dep. 53:8-21; 57:5-58:8, 58:23-60:17. No reasonable juror could find Cornelius and Hickman met to discuss Armstrong's termination only days after she filed her complaint.

Fourth, Armstrong declares that not one of the incidents of misconduct on which defendants rely for termination actually happened. Pl.'s Decl. ¶¶ 18-28. A blanket "I didn't do it" declaration can rarely create a material factual dispute, and that is particular true here where Armstrong intersperses her denials with concessions that each incident did in fact happen but instead justifies why she did it. *Cf. Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."). For example, Armstrong concedes she discussed confidential details about David's autism at the public pool within earshot of strangers, but vehemently denies the information was embarrassing and blames the aide she was with for asking prying questions. Pl.'s Decl. ¶ 18; *see also* Response to DF 47, ECF No. 43-3. But several witness statements and Ms. Bedard's notes from witness interviews independently substantiate defendants' characterization of Armstrong's indiscreet remarks disclosing David's personal information. *See* Witness Statements and Interview Notes. In the face of these documents, Armstrong's unsupported and self-serving declaration does not create a genuine factual dispute.

As to the unauthorized insulin-injecting lesson, Armstrong again admits it happened and merely minimizes it by arguing she performed it "quickly on an orange to calm [the para-educator] down." Pl.'s Decl. ¶ 24. Armstrong also contends the two colleagues who asked not to work with Armstrong told her the true motive for their requests was unrelated to her. *Id.* ¶ 23. But what matters is that these colleagues told defendants their request stemmed from Armstrong's behavior, and that defendants terminated Armstrong, in part, based on these complaints. DF 53, 54, 56; Hickman Decl. ¶ 15.

Armstrong contends the incidents Ms. Hickman cites in her "unsatisfactory" performance" warning did not happen. But, again, Armstrong's responses simultaneously concede the incidents happened and instead attempt to justify them. She concedes she ignored a directive to only use her work-issued cell phone, but argues, without proof that she did so because the phone was in the shop and that "all other [nurses] used their personal phones." Pl.'s Decl. ¶ 21. She concedes her absences from work, but argues without proof that she received approval for each one. *Id.* ¶ 20. She concedes she did not return a timely health care log in December 2012, but argues her shift ended too late to turn it in. *Id.* ¶ 22. She concedes she gave David the unauthorized supplement, but argues David's father instructed her to do it, without his corroboration. *Id.* ¶ 26. She concedes she used offensive language in the classroom, but justifies her word choice. *Id.* ¶ 28. She concedes she was not with David during the fire drill and that he did not have his emergency kit, but states without clarification or meaningful detail that this was not her responsibility. *Id.*

In short, Armstrong's declarations of "I didn't do it" and "I did it but had a reason" create no genuine triable dispute. She concedes the incidents happened and instead justifies each one with her explanation alone. No reasonable juror could conclude she did not commit the charged misconduct that drove her termination. *Nigro*, 784 F.3d at 497 (court may disregard self-serving declarations containing only opinions and conclusions); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002) (explaining neither plaintiff's subjective beliefs nor uncorroborated, self-serving declarations create a genuine issue of fact).

In contrast, defendants' justification for investigating and firing plaintiff is consistent and well-supported. Interview notes, multiple declarations, depositions, and witness statements all confirm plaintiffs' workplace misconduct, including one incident that occurred months before Armstrong's protected activity. Armstrong has not produced reliable contradictory evidence, nor discredited defendants' evidence, as is required to create a triable factual issue. Although Armstrong files, along with her opposition, a 163-page document containing various emails, discovery documents, depositions and declarations, she neither weaves this evidence into a coherent opposition nor directs the court to relevant portions. *See generally*, Velez Decl., ECF

No. 43-1. The filing alone, therefore, does not create triable issues. *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 2001) (district court not obliged to search through evidence to discern factual support for party's claims); *cf. Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Armstrong's case, in essence, rests on one argument: Sutter Schools knew about Armstrong's protected activity and then within a relatively short time span, investigated her performance and ultimately terminated her. This argument is insufficient to withstand summary judgment. Finding otherwise would allow an employee to file even a frivolous protected complaint and then sit back, immune from the consequences of poor job performance. *See Nassar*, 133 S. Ct. at 2531-32 (discussing this very concern); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (recognizing concern that "employers will be paralyzed into inaction once an employee has lodged a [protected complaint], making such a complaint tantamount to a 'get out of jail free' card for employees engaged in job misconduct."). Even assuming Armstrong's complaint to the Department was not frivolous, no reasonable juror could find Armstrong's termination was a pretext for unlawful retaliation.

IV. CONCLUSION

The court GRANTS summary judgment for defendants on all three claims: Armstrong has not raised a material factual dispute as to claim one, and Armstrong acquiesces to summary judgment on claims two and three.

This resolves ECF No. 42. The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

DATED: December 15, 2017.

_____
UNITED STATES DISTRICT JUDGE